## ROCHIE M. BRIEN, *Ex parte.*

### April Term, 1874.

HOMESTEAD—HEAD OF A FAMILY.—A widow who is keeping house upon land allotted to her in dower, without any children of her own, but with five orphan children of a deceased sister, who had been members of the family during her husband's life, and with two other orphan children of a sister of her late husband, is the head of a family, within the meaning of the Constitution and the homestead laws passed in accordance therewith, and entitled to the homestead exemption in the dower estate.

*M. M. Brien, jr.*, for petitioner.
*N. D. Malone*, for creditors.

THE CHANCELLOR:—On the 6th day of November, 1867, John S. Brien departed this life, having first made a last will and testament, which was duly proved and recorded. The petitioner, Rochie M. Brien, his widow, was appointed and qualified as administratrix, with the will annexed, of his estate. As widow she dissented from the will, and dower was allotted to her of the realty of which he died seized

3

and possessed. The dower lands thus allotted to her consist of two lots, Nos. 13 and 17, about 300 or 400 yards from each other, on each of which is a house or residence, one of which she has occupied as a residence since her husband's death, the other she has rented to others.

In the administration of her husband's estate she committed *devastavit*, for which, upon final settlement of the estate in this court, as an insolvent estate, she was brought in debt in the sum of $2,360, and a judgment rendered against her and her sureties for the amount, in favor of N. Baxter, jr., clerk and master. An execution has been issued upon this judgment, and levied upon her dower interest in the lands allotted to her in dower as aforesaid. She claims a homestead exemption, as the head of a family, under the Constitution of 1870, and the subsequent legislation carrying the provision into effect. She applied, she says in her petition, first to the sheriff, and then to the clerk and master, to set apart her homestead, but they refused, and she has come into this court by petition in the insolvent suit touching her husband's estate, which is still pending.

The creditors of the estate, who are interested in the proceeds of the judgment and execution, have not objected to the form in which the application is made, and have either positively or tacitly acquiesced in the court proceeding to act upon the application in the mode adopted. The judgment was rendered at the last term of this court, and, so far as appears, upon causes of action originating since the Constitution of 1870.

The facts upon which the petitioner's claim rests are : That she is living on the property assigned to her as dower, and has been, since the death of her husband, keeping house and supporting herself thereon; that her sister and husband died, leaving five orphan children, without means, of whom she has taken care, and two of them are still living with her; that she has tried to be a mother to them, and has been regarded by them as such; that they were also

regarded with parental affection by her late husband, who directed in his will that she should continue to care for them as he had done ; that her husband's sister left two orphan children, who are also living on said place with her ; that the children of her sister, when taken by her husband, were penniless, and those living with her now have no means of support, one of them, a daughter, being now about seventeen years of age.

Upon the foregoing facts the question presented is whether a widow, who is keeping house upon land allotted to her as dower, without children of her own living with her, but with a family consisting of the orphan children of a sister and of her late husband's sister, is a head of a family, within the meaning of the Constitution and laws.

The Constitution of 1870, art. 11, § 11, is : "A homestead, in the possession of each head of a family, and the improvements thereon, to the value in all of $1,000, shall be exempt from sale under legal process during the life of such head of a family, to enure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same. Nor shall such property be alienated without the joint consent of husband and wife, when that relation exists. This exemption shall not operate against public taxes, nor debts contracted for the purchase money of said homestead, or improvements thereon."

The act of 1870, 2d session, ch. 80, § 1, is a substantial repetition of the constitutional provision in the form of a law. The 2d section extends the provision to equitable as well as legal estates. The 3d section designates the mode in which the homestead shall be set apart where the real estate of " such head of a family is levied upon by execution or attachment." This section commences thus : " Whenever the real estate of such head of a family is levied on by execution or attachment, *his or her* homestead shall be set apart in the following manner," etc. The act makes other provisions not necessary to be quoted.

The language, both of the Constitution of 1870 and of

the act of the legislature above quoted, fairly implies that the draftsmen had in their minds as " head of the family" a husband, to whose wife and children the benefit would enure through him. The only thing in the act implying otherwise is the wording of the 3d section, just quoted, which says " his or her homestead shall be set apart in the following manner." And even here the word " her " might be limited to cases where the homestead right commenced in the life-time of the husband. And yet, notwithstanding the peculiar phraseology of the Constitution and the act of the legislature, I cannot think that the benefits of the homestead were intended to be thus limited.

The phrase, " head of a family," would clearly embrace a husband with a wife and children, or a husband with a wife alone, occupying a homestead. But it has never been considered as confined within these narrow limits. Under the act of 1833, ch. 80, exempting certain personal property in favor of the " head of a family engaged in agriculture," it was held by our supreme court that a widow who, with her children, lived with her father on his farm, and in the same house, and assisted in carrying on the farm by the aid of her sons, was entitled to the benefit of the exemption. *Bachman* v. *Crawford*, 3 Humph. 213. In *Marsh* v. *Lizenby*, 41 Ga. 153, the supreme court of Georgia held that a bachelor without wife or child, but with whom his mother and two sisters over twenty-one years of age had been living for several years on the land in controversy, and for whom he had been providing, was the " head of a family," within the meaning of the law allowing a homestead to the head of a family. On the other hand, the same court held, in *Calhoun* v. *McLendon*, 42 Ga. 408, that a bachelor with no family but hired servants was not within the constitutional provision giving a homestead exemption to the " head of a family," and this although the legislature had undertaken to interpret the Constitution, and had passed an act declaring a single person keeping house to be the head of a family.

Mr. Washburn, in the first volume of his work on Real

Property, page 325, *et seq.*, has collected the constitutional and statutory provisions, and the decisions of the courts, upon the subject of homestead exemptions, and who are entitled to their benefits, but, owing to the diversity in the language of the Constitution and laws of the various states, and the fact that the decisions of the courts are made to rest upon the language used, it is impossible to draw any general principles at present from the decisions. In California it seems to be settled that "head of a family," as used in the Constitution and laws, has no reference to the sex of the party, and this seems to be the conclusion in some other states. 1 Washb. 327. In California, also, the right to be considered "head of a family" is not conceded to unmarried persons, "unless they have charge of minor brothers or sisters, or minor children of brothers or sisters, or of a mother or unmarried sister living in a house with them." Mr. Washburn also collects the statutes and decisions of the various states defining the character of estate in which the homestead may be claimed. 1 Washb. 327, *et seq*. There seems to be no conflict in the decisions that the homestead exemption may be claimed in a life estate. 1 Washb. 337. In some states it may be claimed in an estate for years. And in this state we have provided by statute that the exemption shall extend to leasehold estates of more than two, and not exceeding fifteen, years.

The light afforded by the decisions of other states being thus scanty, it is obvious that our courts must construe our Constitution and laws on this subject from their own intrinsic light, with such aid as can be derived from our own decisions on analogous questions. The object of the Constitution and the laws is to secure to a householder and family the benefit of a home, beyond the reach of legal process on the part of creditors. With the policy of the legislation the courts have nothing to do. Their duty is to ascertain the intention of the constitutional convention and the legislature, from the language used by them, and to carry out that intention in the decision of the rights of individuals.

Coming back to the language used, as hereinbefore quoted, I find that the homestead exemption is conceded " to each head of a family." We know that, by the well-settled rules of constitutional and legislative interpretation, words importing the masculine gender include the feminine—a rule properly embodied in the Code, § 50. I also find that, by the 3d section of the act of 1870, wherever the real estate " of such head of a family " is levied on, it is provided that " his or her homestead " shall be set apart, etc. I further find that our supreme court, in construing the words " head of a family," in a statute exempting certain personalty, held them to include a widow living with her father, as before set out. I find the supreme court of Georgia construing the same words as embracing a bachelor keeping house and supporting a mother and two sisters, and the supreme court of California construing the words as embracing unmarried persons having the charge of minor brothers and sisters, or minor children of brothers and sisters. It seems to me, with these lights, that I am justified in considering a widow residing upon her dower land, keeping house, and having the charge of the orphan children of a sister, and children of a sister of her late husband, as entitled to the benefit of the homestead exemption.

It is clear, however, that the exemption can only extend to the house in which the petitioner is residing, and the land adjoining, not exceeding $1,000 in value. The exemption will not embrace the other lot, disconnected from the homestead, even if the latter were worth less than $1,000.

The injunction heretofore granted upon this petition will be dissolved, and an execution or *venditioni exponas* will issue upon the judgment enjoined, but the sheriff will be directed and required to appoint three freeholders to set apart the homestead to the petitioner in the house and lot now occupied by her, in pursuance of the provisions of the act of 1870, 2d session, ch. 80, §§ 3, 4. T. & S. Rev. 2116, *a*, 2117, *a*. The homestead, being only in a life estate, necessarily terminates with the death of the

petitioner. The costs of this application, and of the proceedings to set apart the homestead, will be paid by the petitioner.